UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| ALBERTO MARTINEZ, | § | No. 1:20-CV-01175 |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | |
| | § | |
| UNIVERSITY OF TEXAS AT | § | |
| AUSTIN, | § | |
| | § | |
| Defendant. | § | |

ORDER GRANTING DEFENDANT UNIVERSITY OF TEXAS AT AUSTIN'S
MOTION FOR SUMMARY JUDGMENT

Before the Court is Defendant University of Texas at Austin's ("UT")

Motion for Summary Judgment, filed on June 17, 2022.  (Dkt. # 52.)  Plaintiff

Alberto Martinez ("Martinez") responded in opposition on July 12, 2022.  (Dkt.

# 58.)  UT replied on July 13, 2022.  (Dkt. # 59.)

After careful consideration of the memoranda filed in support of and

against the motion, the Court **GRANTS** UT's Motion for Summary Judgment for

the following reasons.

BACKGROUND

Martinez is a professor at UT's Department of History (the

"Department"), where he has served as a faculty member since 2005.  (Dkt. # 23 at

4.)  In spring 2018, Martinez began voicing his concerns regarding discrimination

1

against Hispanic employees like himself within the Department.  (Dkt. # 23 at 6.)
Specifically, Martinez observed that no Hispanic employee had ever been
appointed to a departmental position of leadership.  (Id.)  On April 19, 2018,
Martinez sent an email to the entire Department detailing the "longstanding
problems in [UT's] department governance."  (Id. at 7.)  Martinez and two of his
Hispanic co-workers also wrote and circulated a "Public Statement on
Governance," which complained about disparities, marginalization, and exclusions
within the Department.  (Id.)

      In response, the Department Chair, Jacqueline Jones ("Jones") created
an Equity Committee (the "EC"), with Martinez as its Chair.  (Id.)  The goal of the
EC was to "(1) propose improvements for departmental governance, (2) revise the
Guidelines for merit raise increases, [and] (3) propose improvements for the tenure
process."  (Dkt. # 1, Exh. # 4.)  Martinez alleges that, from its inception, Jones paid
special attention to the EC and asked to be included in all email correspondences –
something she had not requested from other committees.  (Dkt. # 23 at 11.)

      Martinez and the EC created a report describing the Department's
salary and promotion disparities, particularly among Hispanic and Black
employees.  (Id. at 8.)  Jones claims that she approved the report twice, and
Martinez circulated the draft to the Department on October 15, 2018.  (Id.)
Martinez alleges that the faculty response to the report was mixed.  (Id. at 9.)  He

asserts that while at least thirty-one faculty members praised the EC's work, five white faculty, including Jones, criticized the draft as mischaracterizing the Department and disparaging the work of several female administrative employees. (Dkt. # 23 at 10.)  Martinez also claims that on October 19, 2018, Jones told a member of the Department's Executive Committee that she was going to disband the CE.  (Id.)  Martinez complained to a Department "Faculty Ombuds" about Jones's contention on February 4, 2019.  (Id. at 11.)  Martinez further states that on November 11, 2018, Jones requested that Martinez create subcommittees to divide the labors of the EC.  (Dkt. # 23 at 12.)  Martinez agreed, but in January 2019, Jones unilaterally chose new members, chairs, and goals[1] for each subcommittee without consulting Martinez.[2]  (Id.)

Martinez alleges that Jones took another materially adverse action against him on January 14, 2019, when she filed a report with UT's Office of Inclusion and Equity ("OIE") for sexual misconduct.  (Id. at 13.)  Specifically, Jones claimed that Martinez "engaged in inappropriate conduct with graduate

---

[1] Martinez asserts that Jones solicited feedback on the goal statements from him and others, but refused to implement any of his suggestions.  (Dkt. # 23 at 18-19.)
[2] In the Complaint, Martinez also discusses a dispute between Jones and himself regarding whether he could serve as Chair of the Governance Subcommittee.  (Dkt. # 23 at 14-15.)  Martinez informed the Faculty Ombuds of his concerns, and also met with the EC on February 6, 2019, to discuss the issue.  (Id. at 16.)  Other professors became involved in the dispute and wrote complaint letters in support of Martinez.  (Id. at 17.)

students in the past, and was dating a graduate student now." (Id.) Jones states she learned of the relationship from a former graduate student and the Department's Graduate Program Administrator.[3] (Dkt. # 52 at 12.) Martinez denies ever having an inappropriate relationship with a graduate student. (Dkt. # 23 at 23.) Jones met with the student alleged to be in an inappropriate relationship with Martinez on March 27, 2019. (Id. at 24.) The student denied the relationship. (Id.) Two months later, UT contacted Martinez for additional investigation, which determined that "the evidence did not substantiate a policy violation." (Id. at 25.)

On April 22, 2019, Martinez received another email from a UT investigator, this time regarding a statement he allegedly made that Jones only gave promotions in the Department to Jewish faculty members. (Id.) Martinez denied the allegations, and ultimately, the investigation revealed no evidence to corroborate the claims. (Id. at 27-28; Dkt. # 1-3 at 56-61.)

Finally, Martinez alleges that in May 2019, Jones stripped him of his research funds without explanation and awarded them to the only faculty member who criticized Martinez's work on the EC report. (Id. at 29.) Martinez also asserts that he was nominated by 107 colleagues and students for a prestigious UT

---

[3] During her retirement exit interview, Jones also commented to Monique Pikus ("Pikus"), an Assistant Dean, that a professor was having issues with dating graduate students and denigrating female coworkers. (Dkt. # 52 at 24.) This prompted Pikus to report the matters to UT on March 6, 2020. (Id.; Dkt. # 5-1 at 379.)

teaching award, but because of the rumors circulating about Martinez's alleged relationship with a graduate student, he was not selected.  (Id. at 36.)  Nor was Martinez chosen to head the Department when the position became available in 2019.  (Id. at 37.)

Martinez filed a complaint with the Equal Employment Opportunity Commission ("EEOC") on December 9, 2019 and received a Notice of Right to Sue letter on August 31, 2020.  (Dkt. # 23 at 38; Exh. 61.)  Martinez filed suit against UT on March 9, 2021, alleging retaliation and unlawful discrimination based on national origin or ethnicity in violation of Title VII.  (Dkt. # 1.)  Martinez amended the complaint on April 29, 2021, to retract the unlawful discrimination claim.  (Dkt. # 23.)  Therefore, the only remaining claim in this case is retaliation in violation of Title VII.  UT filed the instant Motion for Summary Judgment on June 17, 2022.  (Dkt. # 52.)

## LEGAL STANDARD

"Summary judgment is appropriate only if 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Vann v. City of Southaven, 884 F.3d 307, 309 (5th Cir. 2018) (citations omitted); see also Fed. R. Civ. P. 56(a).  "A genuine dispute of material fact exists when the 'evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  Bennett v. Hartford Ins. Co. of Midwest, 890 F.3d 597, 604 (5th Cir.

5

2018) (quoting Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986)).  "The moving party 'bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact.'"  Nola Spice Designs, LLC v. Haydel Enter., Inc., 783 F.3d 527, 536 (5th Cir. 2015) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).

> "Where the non-movant bears the burden of proof at trial, 'the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating . . . that there is an issue of material fact warranting trial.'"  Kim v. Hospira, Inc., 709 F. App'x 287, 288 (5th Cir. 2018) (quoting Nola Spice Designs, 783 F.3d at 536).  While the movant must demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements of the nonmovant's case.  Austin v. Kroger Tex., L.P., 864 F.3d 326, 335 (5th Cir. 2017) (quoting Little v. Liquid Air Corp., 37 F.3d 1069, 1076 n.16 (5th Cir. 1994)).  A fact is material if it "might affect the outcome of the suit."  Thomas v. Tregre, 913 F.3d 458, 462 (5th Cir. 2019) (citing Anderson, 477 U.S. at 248).

> "When the moving party has met its Rule 56(c) burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings."  Jones v. Anderson, 721 F. App'x 333, 335 (5th Cir. 2018) (quoting Duffie v. United States, 600 F.3d 362, 371 (5th Cir.

2010)).  The nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim.  Infante v. Law Office of Joseph Onwuteaka, P.C., 735 F. App'x 839, 843 (5th Cir. 2018) (quoting Willis v. Cleco Corp., 749 F.3d 314, 317 (5th Cir. 2014)).  "This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'"  McCarty v. Hillstone Rest. Grp., Inc., 864 F.3d 354, 357 (5th Cir. 2017) (quoting Boudreaux v. Swift Transp. Co., 402 F.3d 536, 540 (5th Cir. 2005)).  In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party.  Wease v. Ocwen Loan Servicing, LLC, 915 F.3d 987, 992 (5th Cir. 2019).

Additionally, at the summary judgment stage, evidence need not be authenticated or otherwise presented in an admissible form.  See Fed. R. Civ. P. 56(c); Lee v. Offshore Logistical & Transp., LLC, 859 F.3d 353, 355 (5th Cir. 2017).  But "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment."  United States v. Renda Marine, Inc., 667 F.3d 651, 655 (5th Cir. 2012) (quoting Brown v. City of Hous., 337 F.3d 539, 541 (5th Cir. 2003)).

DISCUSSION

In a Title VII retaliation case, the allocation of the burden of proof

depends on the nature of the plaintiff's evidence supporting the causation element.

Fierros v. Tex. Dep't of Health, 274 F.3d 187, 191 (5th Cir. 2001).  Where, as in

this case, a plaintiff seeks to prove causation by circumstantial evidence,[4] the

McDonnell Douglas burden-shifting framework applies.  See McDonnell Douglas

Corp. v. Green 411 U.S. 792, 802 (1973); see also Cooper v. Dall. Police Ass'n,

278 Fed.App'x. 318, 319 (5th Cir. 2008) (applying the McDonnell Douglas

framework).  Under McDonnell Douglas, the plaintiff must first establish a prima

facie case of Title VII retaliation, which has three elements: (1) the employee

engaged in [an] activity protected by Title VII; (2) an adverse employment action

occurred; and (3) a causal link exists between the protected activity and the adverse

action.  411 U.S. at 802; see also Banks v. East Baton Rouge Parish Sch. Bd., 320

F.3d 570, 575 (5th Cir. 2003).

Once the plaintiff establishes a prima facie case of retaliation, the

burden shifts to the employer to state a legitimate, non-retaliatory reason for the

disputed action.  Cooper, 278 Fed.App'x at 319 (citing Hockman v. Westward

---

[4] Circumstantial evidence requires the trier of fact to infer a nexus between the
evidence and the adverse employment action.  Brown v. E. Miss. Elec. Power
Ass'n, 989 F.2d 858, 861 (5th Cir. 1993).  The parties do not appear to dispute that
Martinez has provided only circumstantial evidence of retaliation and thus carries
the burden of establishing his prima facie case.  (See Dkts. ## 52 at 15, 58 at 17.)

8

Comm'n LLC, 407 F.3d 317, 330 (5th Cir. 2004)).  If the employer asserts a legitimate non-retaliatory explanation, the burden falls back to the plaintiff to show that the employer's stated reason is merely pretext for retaliation.  Id. (citing McDonnell Douglas, 411 U.S. at 804).

UT argues that Martinez's retaliation claim fails at each of the three McDonnell Douglas steps.  (Dkt. # 52 at 15.)  First, UT argues that Martinez failed to establish a prima facie case of retaliation because (1) he bases the claim on his October 15th report, which is not a protected activity; (2) there is too large of a temporal gap between his first discrimination complaint and the first alleged adverse act to establish causation; and (3) the alleged acts are not materially adverse.  (Id.)  UT next contends that it met its burden of asserting legitimate non-retaliatory reasons for taking its acts, and that Martinez has no evidence showing otherwise.  (Id.)  Finally, UT claims Martinez did not properly exhaust his administrative remedies, as some of his claims are untimely and others were not included in his EEOC complaint.  (Id. at 16.)

The Court holds that Martinez failed to meet his burden of establishing a prima facie case of retaliation under Title VII for the reasons that follow.

I.     Exhaustion of Administrative Remedies

In order to simplify the claims to be analyzed as part of Martinez's prima facie case of Title VII retaliation, the Court first considers UT's exhaustion arguments.

Martinez bases his retaliation claim upon several of Jones's acts, spanning from October 2018 to May 2019.  (Dkt. # 23 at 38-39.)  UT alleges that Martinez cannot use the following acts as a basis for his claim: (1) the loss of his research fellowship; (2) the failure to select him for the President's Associate Teaching and Civiatis awards; (3) his non-reappointment to the Salary and Equity Committee; (4) Pikus's Title IX reports; (5) Jones's comment regarding the disbanding the EC; (6) the sexual misconduct report filed by Jones on January 14, 2019; and (7) the subcommittee-based acts from November 2018.  (Dkt. # 52 at 25-26.)  UT contends that acts (1) through (4) are barred because Martinez failed to include them in his EEOC charge, and that acts (5) through (7) are barred as untimely.  (Id. at 25.)

The Court first finds that acts (5) through (7) are indeed barred as untimely.  To be timely, an EEOC charge must be filed within either 180 or 300 days of the alleged unlawful employment practice.[5]  42 U.S.C. § 2000e-5(e)(1).  In

---

[5] The standard for Title VII cases is 180 days, but the limitations period is extended to 300 days if the employee also filed a charge of discrimination with a state or

this case, Martinez may only base his retaliation claim on acts of discrimination that occurred prior to February 12, 2019.[6]  Jones's alleged comment regarding disbanding the EC occurred on October 19, 2018 (Dkt. # 23 at 10); Jones's sexual misconduct report was filed on January 14, 2019 (Id. at 13); and most of Jones's alleged adverse acts related to the EC subcommittees occurred from November 2018 through February 9, 2019.  (Id. at 16.)  All of these acts occurred prior to February 12, 2019, and are therefore time-barred.

Next, the Court concludes that Martinez is barred from raising acts (1), (2), and (4) as a basis for his retaliation claim.[7]  See Morgan, 536 U.S. at 112 ("[D]iscrete acts that fall within the statutory time period do not make timely acts that fall outside the time period.").  As a precondition to seeking judicial relief under Title VII, complaining employees must exhaust their administrative remedies by filing a charge of retaliation with the EEOC.  Pacheco v. Mineta, 448

---

local employment agency.  42 U.S.C. § 2000e-5(e)(1); see also Griffin v. City of Dall., 26 F.3d 610, 611 (5th Cir. 1994).

[6] In this case, the limitations period is 300 days because Martinez simultaneously filed a charge of discrimination with the Austin Equal Employment/Fair Housing Office and the EEOC on December 9, 2019.  (Dkt. # 58-1 at 6.)  Thus, the date of February 12, 2019 was calculated by subtracting 300 days from December 9, 2019.

[7] As for claim (3), contrary to UT's assertion, Martinez's EEOC charge does state that "[i]n September 2019, Jones removed [Martinez] from both the Equity Committee and the Salary Committee."  (Dkt. # 58-1 at 8.)  Therefore, Martinez administratively exhausted act (3) and he may include it as the basis of his retaliation claim.

F.3d 783, 788 (5th Cir. 2006); <u>Brown v. Gen. Servs. Admin.</u>, 425 U.S. 820, 896

(1973).  A plaintiff's relief is limited to claims of discriminatory acts made in the

EEOC charge or the scope of the EEOC investigation that could reasonably be

expected to grow out of the charge of discrimination.  <u>See</u> <u>Nat'l R.R. Passenger</u>

<u>Corp. v. Morgan</u>, 536 U.S. 101, 114 (2002); <u>Sanchez v. Standard Brands, Inc.</u>, 431

F.2d 455, 466 (5th Cir. 1970).

       In <u>Morgan</u>, the Supreme Court recognized one exception to the

requirements of 42 U.S.C. § 2000e-5(e)(1) for hostile work environment claims.

536 U.S. at 120.  Acknowledging that the "very nature" of hostile work

environment claims "involves repeated conduct," the Court held that as long as at

least one act falls within the filing period, other untimely acts constituting the

claim will not be time-barred.  <u>Id.</u> at 115, 122 (also known as the "continuing

violations" doctrine).  Some courts apply the continuing violations doctrine to

retaliation claims if the facts are analogous to a hostile work environment claim.

<u>See, e.g.</u> <u>Newton v. Securitas Sec. Servs., USA Inc.</u>, 250 Fed.App'x 18, 20 (5th

Cir. 2008); <u>Heath v. Bd. of Supervisors for South. Univ. and Agric. Mech. Coll.</u>,

850 F.3d 731, 741 (5th Cir. 2017).[8]  However, Martinez's claim is based on

---

[8] Notably, the <u>Newton</u> decision is an unpublished opinion, and therefore not
binding on this Court.  Because nearly all Fifth Circuit courts apply the continuing
violations doctrine only to hostile work environment claims, this Court will not
deviate from widely accepted precedent.

discrete retaliatory acts, he has not alleged a claim of hostile work environment, and he has made no argument that the continuing violations doctrine should apply. See Heath, 850 F.3d at 741-42; see also Tompkins v. Amarillo Coll., No. 2:19-cv-27-Z, 2021 WL 4796916 at *5 (N.D. Tex., May 14, 2021).  Accordingly, the Court will not apply the continuing violations doctrine here.  See id.; see also Doe #1 v. Bd. of Supervisors of La. State U. & Agric. & Mech. Coll., No. 21-564-SDD-SDJ, 2022 WL 16701930, at *18 (M.D. La. Nov. 3, 2022).

UT is correct that Martinez's EEOC charge does not explicitly discuss the loss of his fellowship and teaching awards or Pikus's Title IX reports.  (See Dkt. # 58-1 at 6-8.)  And because there is no evidence in the record to support that the loss of fellowship and failure to receive teaching awards are "reasonably expected" to grow out of Martinez's EEOC charge, Martinez may not raise them as a basis for his claim.[9]  Sanchez, 431 F.2d at 461.  By contrast, Pikus's Title IX reports could reasonably be expected to grow out of the EEOC charge, given that Martinez included Jones's sexual misconduct allegations in the charge.  However, Martinez alleged no facts regarding Pikus's reports in the Complaint; nor did he "articulate precisely how [evidence of Pikus's reports] support[] his claim" in his

---

[9] Martinez offers no more than conclusory assertions that he was not selected for these accolades because of the rumors circulating about his alleged relationship with a graduate student.  (Dkt. # 23 at 35.)

Response to the Motion for Summary Judgment.[10] RSR Corp. v. Int'l Ins. Co., 612 F.3d 851, 857 (5th Cir. 2010). Therefore, Martinez is precluded from raising these acts now. Cutrera v. Bd. of Sup'rs of La. State Univ., 429 F.3d 108, 113 (5th Cir. 2005) ("A claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court.") (citing Fisher v. Metro. Life Ins. Co., 895 F.2d 1073, 1078 (5th Cir. 1990)).

Because Martinez either failed to exhaust his administrative remedies or was untimely with alleged acts (1), (2), and (4), (5), (6), and (7), the only alleged retaliatory acts from the Complaint remaining to support his claim are as follows: Jones's claims that Martinez made anti-Semitic statements and created a toxic work environment, dividing Jewish and non-Jewish employees; the claims that Martinez generated disparaging emails about female faculty; and Jones's removal of Martinez from the EC in September 2019. (See Dkt. # 23 at 38-39.)

II.    Martinez's Prima Facie Case

As discussed above, Martinez bears the burden of establishing a prima facie case of Title VII retaliation. The prima facie elements of a retaliation claim are: (1) the employee engaged in [an] activity protected by Title VII; (2) an adverse employment action occurred; and (3) a causal link exists between the

---

[10] Martinez raises facts about Pikus's report for the first time in his Response (Dkt. # 58 at 14-15) but makes no argument or analysis of those facts in his discussion.

protected activity and the adverse action.  <u>Banks</u>, 320 F.3d at 575.  UT argues that

Martinez has failed to demonstrate any of the elements.  (<u>See</u> Dkt. # 52.)

    a.  <u>Activity Protected by Title VII</u>

       In the Complaint, Martinez bases his retaliation claim on his

participation and leadership in the EC, including the October 15, 2018 salary report

(the "Report"), which he alleges constitutes a protected activity under Title VII.

(Dkt. # 23 at 38.)  UT contends that the Report and participation in the EC are not

protected acts under Title VII.  (Dkt. # 52 at 16.)  The Court agrees, but finds that

Martinez's initial complaint giving rise to the EC constitutes a protected activity

sufficient to meet the first element of his prima facie case.

       An employee has engaged in "protected activity" when [he] has "(1)

'opposed any practice made an unlawful employment practice' by Title VII or (2)

'made a charge, testified, assisted, or participated in any manner in an

investigation, proceeding, or hearing' under Title VII."  <u>Douglas v.</u>

<u>DynMcDermott Petroleum Operations Co.</u>, 144 F.3d 364, 372-73 (5th Cir. 1998)

(quoting 42 U.S.C. § 2000e-3(a)).  These statutory prongs are generally referred to

as the "opposition clause" and the "participation clause," respectively.  <u>Stingley v.</u>

<u>Watson Quality Ford, Jackson, MS</u>, 836 Fed.App'x. 286, 289 (5th Cir. 2020).

Martinez argues his conduct falls under both the opposition clause and the

participation clause.  (Dkt. # 58 at 17-18.)  First, Martinez insists that he opposed

unlawful practices, both in his original complaint of discrimination that gave rise to the EC and when he complained to UT investigators that Jones was retaliating against him.  (Id. at 18.)  Second, he states he participated in protected activity by serving as Chair of the EC.  (Id.)

        Turning first to the participation clause argument, the Court finds that Martinez's participation in the EC and resulting Report do not constitute protected activities under Title VII.  Most courts have held that "Title VII's participation cause prohibits only retaliation based on an employee's participation in an EEOC investigation, and [] accordingly does not protect cooperation with an employer's internal investigation."  Besser v. Tex. Gen. Land Office, 834 Fed.App'x. 876, n. 2 (5th Cir. 2020); see also Townsend v. Benjamin Enter., Inc., 679 F.3d 41, 49 (2d Cir. 2012); EEOC v. Total Sys. Servs., Inc., 221 F.3d 1171, 1174 (11th Cir. 2000); Vasconcelos v. Meese, 907 F.2d 111, 113 (9th Cir. 1990).  The Fifth Circuit has further held that a plaintiff cannot allege retaliation based on participation when the participation predates the filing of an EEOC charge.  See Stingley, 836 Fed.App'x. at 289-90; see also Byers v. Dall. Morning News, 209 F.3d 419, 428 (5th Cir. 2000) (stating that the participation clause is irrelevant when alleged retaliation predates plaintiff's filing of an EEOC charge).  Because Martinez's participation in the EC and Report predated his EEOC charge, his retaliation claim can only survive if his activity falls within Title VII's opposition clause.

Martinez has in fact alleged evidence sufficient to prove a protected activity under the opposition clause.  To satisfy the opposition clause, Martinez need only show that he had "a reasonable belief that the employer was engaged in unlawful employment practices [under Title VII]." Byers, 209 F.3d at 428 (5th Cir. 2000) (quoting Payne v. McLemore's Wholesale & Retail Stores, 654 F.2d 1130, 1140 (5th Cir. 1981)).  "This 'reasonable belief' standard acknowledges that there is 'some zone of conduct that falls short of an actual violation but could be reasonably perceived to violate Title VII." EEOC v. Rite Way Serv., Inc., 819 F.3d 235, 241 (5th Cir. 2016).  But an employee "cannot simply complain that [he] received unfair or undesirable treatment." Carter v. Target Corp., 541 F.App'x 413, 417 (5th Cir. 2013).  He must "refer to conduct that could plausibly be considered discriminatory in intent or effect, thereby alerting the employer of its alleged discriminatory practices." Allen v. Envirogreen Landscape Pros., Inc., 721 F.App'x 322, 326 (5th Cir. 2017).

Viewed in the light most favorable to Martinez, the evidence supports an objectively reasonable belief that the Department was violating Title VII. Martinez and two other employees observed pay discrepancies among Hispanic and non-Hispanic employees and identified that no Hispanic employee had ever been appointed to a position of leadership in the Department.  (Dkt. # 23 at 6-7.) They informed Jones and the rest of the Department of these concerns by email

and through a public statement on May 2, 2018.  (Dkt. # 1-2 at 52.)  "An informal complaint to a supervisor regarding an unlawful employment practice may satisfy the opposition requirement of a Title VII retaliation claim." <u>Tureaud v. Grambling State Univ.</u>, 294 Fed.App'x 909, 914 (5th Cir. 2008).  Though not conclusive evidence of a Title VII discrimination, at the prima facie stage, Martinez need only show that his informal complaint at least referred to his belief that the employment practices were discriminatory in intent or effect.  <u>See</u> <u>Wilkinson v. Pinnacle Lodging, LLC</u>, No. 20-3427, 2022 WL 308437, at *13 (E.D. La. Aug. 3, 2022).  The email of May 2, 2018 did just that.  (<u>See</u> Dkt. # 1-2 at 52.)  Therefore, Martinez has met his burden of establishing the first prima facie element of his retaliation claim.

### b.  <u>Adverse Action Occurred</u>

The next element Martinez must establish for his prima facie case is whether an adverse employment action occurred.  <u>Banks</u>, 320 F.3d at 575. Martinez contends that although he remains employed by UT, Jones's actions deterred him from engaging in his protected activity of opposing discrimination against Hispanic employees in the Department.  (Dkt. # 58 at 19.)  UT argues that the acts taken by Jones were not materially adverse.[11]  (Dkt. # 52 at 19.)

---

[11] UT also maintains that it had legitimate non-retaliatory reasons for taking the acts in question, but the Court does not consider this argument at the prima facie stage.  (Dkt. # 52 at 19.)

As discussed above, Martinez is time-barred from basing his claim on adverse acts occurring prior to February 12, 2019, or those that were not raised in his EEOC complaint.  Thus, the only adverse acts Martinez may allege as part of his prima facie case are Jones's claims that Martinez made anti-Semitic statements and created a toxic work environment, dividing Jewish and non-Jewish employees; the claims that Martinez generated disparaging emails about female faculty; and Jones's removal of Martinez from the EC in September 2019.  (See Dkt. # 23 at 38-39.)  The Court finds that the allegations of anti-Semitism and removal from EC suffice to establish a prima facie case of adverse employment action.

An "adverse employment action," of kind to support a Title VII retaliation claim, is "one that a reasonable employee would have found to be materially adverse, meaning it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."  Hernandez v. Yellow Transp., Inc., 670 F.3d 644, 657 (5th Cir. 2012) (quoting Aryain v. Wal-Mart Stores Tex. LP, 534 F.3d 473, 484 (5th Cir. 2008)).  Allegations of "petty slights, minor annoyances, and simple lack of good manners" are not actionable retaliatory conduct.  Aryain, 534 F.3d 473, 485 (5th Cir. 2008) (quoting Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006)).  Nor are objectively "trivial harms."  White, 548 U.S. at 68.

The Court first notes that Martinez's claim that Jones falsely accused him of writing "disparaging" emails about female co-workers in both a private meeting on February 24, 2019, and in writing on March 20, 2019, is not an adverse act.  (Dkt. # 58-1 at 7.)  Jones's admonitions were made in private and had no effect on Martinez's job title, duties, hours, salary, or standing among his coworkers.  Burlington N., 548 U.S. at 68 (describing the purpose of the objective standard as being to filter out complaints attacking the ordinary tribulations of the workplace).  Thus, these acts fail to rise to the level of adversity required under Title VII.  Id.; see also Lopez v. Kempthorne, 684 F.Supp.2d 827 (S.D. Tex. Jan. 14, 2010) ("If the context shows no adverse impact as a result and no blame can be attributed to the employee that 'might carry a stigma in the workplace', an employment action is not an adverse action.").

But a reasonable juror could find that Martinez's removal from the EC – a committee designed to combat the discrimination of which he originally complained – would dissuade a reasonable worker from making any further charges of discrimination.  See cf. Edmondson v. Bd. of Trustees of Univ. of Ala., 258 Fed.App'x 250, 254 (11th Cir. 2007) (finding no adverse action when a professor was removed from the department diversity committee after complaining about her salary).  Unlike Edmondson, where the entire committee was disbanded, the EC continued to exist, but Martinez specifically was removed as Chair.  (See

Dkt. # 58-1 at 116.)  Further, Martinez's engagement in a Title VII protected activity was the reason for the EC's institution, whereas Edmonson involved a pre-existing diversity committee and the plaintiff's complaint was about her lack of compensation, not departmental discrimination.  258 Fed.App'x at 251.  In sum, there are enough facts to support that removal from the EC would dissuade a reasonable employee from making further discrimination claims.

Moreover, Martinez has provided enough evidence to support his claim that a reasonable employee would be materially harmed by allegedly false allegations of anti-Semitism.  Though allegations of workplace criticism typically do not constitute adverse employment actions, the alleged acts rise above mere "job scrutiny."  See Tingle v. Hebert, 305 F.Supp.3d 678, 689 (M.D. La. Apr. 16, 2018) (finding an adverse action where an employee was subjected to a scrutinizing and ultimately fruitless internal investigation).  According to Martinez, the anti-Semitism investigation took months and ultimately yielded a finding that Martinez had not committed any discriminatory acts.  (See Dkt. # 58-1 at 356.)  A reasonable juror could find from these circumstances that the allegations and subsequent investigation would have "dissuaded a reasonable worker from making or supporting a charge of discrimination."  Id. (quoting Burlington N., 548 U.S. at 68).  Thus, Martinez has satisfied his burden of providing evidence that an adverse action occurred.

c.  Causation

UT also argues that Martinez has failed to establish the third element of his prima facie case: a causal link between the protected activity and the adverse employment action.  (Dkt. # 52 at 18.)  Specifically, UT claims that the temporal gap between Martinez's first discrimination complaint and his first alleged adverse act is too long; Martinez has no evidence showing Jones's alleged retaliatory motive; and Jones was not meaningfully involved in many of the alleged retaliatory acts.  (Id.)  The Court agrees.

To establish the causal link required to make a prima facie case of retaliation under Title VII, "a plaintiff must produce evidence demonstrating that the materially adverse action was taken at least in part on the knowledge of the plaintiff's protected activity."  Standley v. Rogers, 202 F.Supp.3d 655, 670 (W.D. Tex. Aug. 15, 2016).  However, "mere knowledge is not sufficient alone to establish a prima facie case for retaliation."  Id.  "Temporal proximity between an employer's knowledge of a protected activity and an adverse employment action can serve, in some instances, as indirect evidence of a causal link."  Id.  But the proximity between the knowledge and adverse action must be "very close."  Id.

In spring 2018, Jones became aware of Martinez's protected activity – his opposition to allegedly discriminatory pay and promotion practices in the

22

Department[12] – and instituted the EC, with Martinez as Chair, to investigate the issue.  (Dkts. ## 23 at 6; 1-2 at 54.)  The first adverse act under which Martinez may state a claim of retaliation occurred in April 2019 when Jones filed a report against him for allegedly making anti-Semitic comments.  (Dkt. #1-3 at 56-61.)  Given that nearly a year passed between the protected activity and the adverse act, there is no temporal proximity giving rise to a causal link.  See Standley, 202 F.Supp.3d at 670 (describing a nine-month gap as too distant to establish a causal link based on temporal proximity and citing other cases that held three- and four-month gaps in time were too large to establish causation); see also Atkins v. Se. Cmty. Health Sys., 712 F.App'x 388, 391 (5th Cir. 2017) ("[T]he mere fact that some adverse action is taken after an employee engages in some protected activity will not always be enough for a prima facie case, especially if a lengthy period of time passed between the two.").

Further, Martinez offers only conclusory statements regarding Jones's retaliatory motive.  (See Dkt. # 58 at 22.)  Even considering Jones's stray comment regarding disbanding the EC and her disregard of Martinez's input with respect to the creation and management of the subcommittees as evidence of a retaliatory intent, Martinez has shown no causal link between his opposition to

---

[12] It bears repeating that Martinez's work as Chair of the EC and the resulting Report in 2018 are not protected activities under Title VII.

Hispanic discrimination in the Department and Jones's allegations of anti-Semitism.  Jones stated that a graduate student informed her that Martinez made anti-Semitic statements during a private conversation in his office.  (Dkt. # 1-3 at 58.)  According to Jones, these statements caused tension within the Department, particularly between Jewish and non-Jewish faculty.  (Id.)  UT's investigation of the accusation ultimately determined there was insufficient evidence to support Jones's claim, but this alone does not prove that Jones's proffered reason for filing the report was false.  See, e.g. Moini v. Univ. of Tex. at Austin, 832 F.Supp.2d 710, 722-23 (W.D. Tex. June 2, 2011) (finding no prima facie case for an employee who provided no evidence other than his own disagreement that a reprimand was issued because he engaged in a protected activity).  Martinez has pled no other facts suggesting Jones was motivated by anything other than the complaint from the graduate student.  Thus, Martinez's conclusion that the complaint was motivated by a retaliatory motive is devoid of any objective evidence that can lead the Court to find the requisite causal link.

Moreover, no reasonable juror would find that, after creating the EC and instituting Martinez as its Chair for over a year, Jones removed Martinez from the role out of a desire to prevent him from opposing discrimination in the Department.  Martinez has provided no evidence to suggest as much, nor has Martinez asserted facts overcoming UT's evidence showing that an outside

university committee – not Jones – made the decision not to reappoint Martinez to the EC.  (See Dkt. # 58-1 at 18.)  Thus, the Court cannot find causation as to this claim.

Because Martinez has failed to establish a prima facie case of retaliation under Title VII, the Court need not address the parties' arguments regarding UT's non-retaliatory reason and Martinez's showing of pretext under the McDonnell Douglas framework.  Accordingly, UT's Motion for Summary Judgment is granted.

CONCLUSION

For the reasons stated above, the Court **GRANTS** UT's Motion for Summary Judgment.  (Dkt. # 52.)  The Clerk's office is instructed to **ENTER JUDGMENT** and **CLOSE THE CASE**.

**IT IS SO ORDERED**.

**DATE:** Austin, Texas, December 14, 2022.

_____
David Alan Ezra
Senior United States District Judge